# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

THRESEA K. YOUNG,            )
                             )
            Plaintiff,       )
                             )
v.                           )  Case No. CIV-13-488-KEW
                             )
CAROLYN W. COLVIN, Acting    )
Commissioner of Social       )
Security Administration,     )
                             )
            Defendant.       )

## OPINION AND ORDER

Plaintiff Thresea K. Young (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on May 24, 1961 and was 50 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a fast food service manager, kitchen supervisor, dietary assistant, telephone solicitor, and gate guard. Claimant alleges an inability to work beginning March 15, 2009 due to limitations resulting from bipolar disorder

and depression.

**Procedural History**

On July 9, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On February 24, 2012, an administrative hearing was held before Administrative Law Judge ("ALJ") Trace Baldwin by video with Claimant appearing in Ada, Oklahoma and the ALJ presiding in McAlester, Oklahoma. By decision dated April 18, 2012, the ALJ denied Claimant's request for benefits. The Appeals Council denied review of the ALJ's decision on August 29, 2013. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly evaluate the opinion of Claimant's treating physician; and (2) failing to perform a proper credibility determination.

**Evaluation of the Treating Physician's Opinion**

In his decision, the ALJ found Claimant suffered from the severe impairments of depression and bipolar disorder. (Tr. 15). The ALJ determined Claimant retained the RFC to perform a full range of work at all exertional levels with the non-exertional limitations that due to psychological pathology Claimant was limited but can understand, remember, and perform simple unskilled tasks with routine supervision, could relate to supervisors and peers on a superficial basis, could not relate to the general public, and could adapt to a work situation without withdrawing from the worksite or work processes. (Tr. 17).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of sweeper/cleaner, assembler, and cleaner, all of which the vocational expert testified existed in sufficient numbers nationally and regionally. (Tr. 25). The ALJ, therefore, concluded Claimant was not disabled. (Tr. 25-26).

Claimant contends the ALJ failed to properly consider the opinion of her treating physician, Dr. Alycea Merideth. Dr. Merideth completed a Medical Assessment of Ability to Do Work-

Related Activities (Mental) form on Claimant.  She determined suffered from a "complete loss of ability to perform in a regular, competitive employement" the functions of the ability to demonstrate reliability by maintaining regular attendance and being punctual within customary tolerances; maintaining concentration for an extended period of 2 hours; maintaining attention/stay on task for an extended period of 2 hours; the ability to act appropriately with the general public; the ability to ask simple questions or request assistance; the ability to accept instructions and respond appropriately to criticism from supervisors; behaving in an emotionally stable manner; the ability to respond appropriately to changes in a routine work setting; and the ability to finish a normal work week without interruption from psychologically based symptoms.  (Tr. 551-52).

Dr. Merideth also determined Claimant suffered a "substantial loss of ability to perform the activity in a regular, competitive employment" the functions of the ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions; ability to perform at a consistent pace without an unreasonable number and length of rest periods/breaks; and ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.  Id.  Dr. Merideth estimated Claimant's GAF at 51 and noted Claimant suffered from crying spells,

6

appetite disturbance, sleep disturbance, paranoia, low energy, difficulty thinking/confusion, racing thoughts, chronic depression, suicidal thoughts, and anger outbursts. The form also indicates that when Dr. Merideth stated in her notes that Claimant was "doing well" or "doing OK", it meant that minimal positive adjustment may have occurred and that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate. (Tr. 552).

Dr. Merideth stated that Claimant's condition would cause her to be absent from work more than 4 days per month. She also indicated no substance abuse was noted. (Tr. 553).

The ALJ noted this assessment but found the opinion (1) invaded the province of the ALJ by stating Claimant was disabled; (2) Dr. Merideth did not describe her relationship with Claimant; (3) Dr. Merideth was not Claimant's primary mental health provider; (4) the opinion is inconsistent with the evidence of record; and (5) the opinion is not supported by medical signs and laboratory findings. (Tr. 21-22). As a result, the ALJ gave the opinion "no weight." (Tr. 22).

This Court has not located anywhere in the opinion where she stated Claimant was disabled. The remainder of the opinion on the form consists of functional restrictions based upon Claimant's diagnosed condition. Further, while Claimant clearly responded to

7

medication, she suffered from the conditions and symptoms which Dr. Merideth accurately set forth on the assessment form. Claimant was diagnosed with crying spells, appetite and sleep disturbances, paranoia, fatigue, confusion, racing thoughts, suicidal thoughts, and anger outbursts. (Tr. 397-99, 406, 412-13, 428, 432-34, 436-38, 445, 448, 451, 454, 460, 463, 466, 493, 495, 499-500, 503, 517, 522, 528, 533, 541, 543-44, 548, 566, 570, 578, 580-82). Additionally, Dr. Merideth expressly stated on the form that the fact she indicated in her notes that Claimant was "doing well" only demonstrated that a minimal advancement had been made subject to setback with a change of circumstance.

Most disturbing in the ALJ's analysis is a line of statements that Dr. Merideth and the group for which she works had as its goal to find Claimant disabled. Specifically, the ALJ stated

> MHSO records reflect that from the get-go it was one of that agency's goals to qualify claimant for disability benefits (probably out of funding concerns). Dr. Merideth may present a MSS that possibly reflects less than an entirely impartial medical opinion (that may be a reflection of her MHSO employer's goals).

(Tr. 22).

This statement smacks of the old "treating physician's report appears to have been prepared as an accommodation to a patient" statement that has been roundly rejected as a basis for reducing the controlling weight normally afforded a treating physician's

8

opinion.  Miller v. Chater, 99 F.3d. 972, 976 (10th Cir. 1996) citing Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987).  The statements made by the ALJ in this regard represent rank speculation as to the purpose and goal of the treatment at MHSO that has no place in the treating physician analysis.

The ALJ also found without explanation that Dr. Merideth did not appear to be Claimant's primary mental health care giver.  The records from MHSO do not reflect any other physician rendering treatment.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight."  Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record."  Id. (quotation omitted).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors

9

provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

While the ALJ cited the various factors, it is apparent that

his evaluation of Dr. Merideth's opinion and treatment regimen was jaded by his stated belief that the opinion was manufactured for the purpose of finding Claimant disabled and improving the funding position of MHSO. In essence, the ALJ sacrificed his objectivity upon the alter of speculation while ignoring the various findings of Claimant's mental health problems. On remand, the ALJ rendering this decision, or perhaps a less jaded ALJ, shall reconsider his findings on Dr. Merideth's opinion in light of the medical record utilizing the factors recognized by the case authority and the regulations.

### Credibility Determination

The ALJ determined Claimant was not credible in her stated restrictions in functioning. He found the medical evidence did not support such restrictions. Since this Court is ordering that the opinion of Claimant's treating physician be re-evaluated, it is prudent to permit the ALJ to determine whether the re-evaluation results in an effect upon the credibility of Claimant's testimony.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the**

**matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 30th day of March, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE